J-A07037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.H. | : | |
| | : | |
| | : | No. 1356 MDA 2017 |
| APPEAL OF: R.H. | : | |

Appeal from the Order Entered August 1, 2017
in the Court of Common Pleas of Luzerne County Civil Division at No(s):
11038-2014

BEFORE:   PANELLA, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                   **FILED APRIL 27, 2018**

Appellant, R.H. ("Father"), files this appeal from the order dated July 28, 2017, and entered August 1, 2017,[1] in the Luzerne County Court of Common Pleas, awarding him shared legal and shared physical custody of his minor sons M.H., born in July 2004, and J.H., born in April 2006 (collectively,

---

[*] Former Justice specially assigned to the Superior Court.

[1] The subject decree was dated July 28, 2017.  However, the clerk did not provide notice pursuant to Pa.R.C.P. 236(b) until August 1, 2017.  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999).

"the Children") with J.H. ("Mother"). After review, we affirm the learned trial court's order.

The court conducted a custody trial on July 14, 2017, at which time both Father and Mother, represented by counsel, testified on their own behalf. Mother and Father were married in 1998. N.T. Custody Trial, 7/14/17, at 74. While Father filed a Complaint for Divorce in 2014, which included a count for custody, the parties and the Children continued to reside together until the spring of 2016.[2] N.T. at 8, 57. Father additionally filed a Complaint in Custody in January 2016. Pursuant to an interim order by agreement dated March 2, 2016, and entered March 3, 2016, after a conciliation conference, the parties were awarded shared legal custody. Order, 3/3/16; N.T. at 4. Thereafter, by order entered March 17, 2016 by agreement, Mother was granted exclusive possession of the marital home, located in Benton, Pennsylvania, where she remained with the Children. Father moved to Shickshinny, Pennsylvania, approximately twenty-five minutes away. Order, 3/17/16; N.T. at 6, 8.

The parties began following a physical custody schedule, which was not the result of a court order, whereby Father exercised physical custody of the Children every other weekend from Friday after school until Sunday at 7:00 p.m., every Tuesday overnight, and every other Thursday after school until

---

[2] Mother and Father were still officially married at the time of the hearing. N.T. at 8.

7:00 p.m.[3]  N.T. at 13; Joint Exhibit 1 at 3.  During the summer, Father had additional physical custody on every other Thursday night until Friday at 3:00 or 4:00 p.m. and Sunday night until Monday until 3:00 or 4:00 p.m.  Joint Exhibit 1 at 3; Joint Exhibit 2.  Subsequently, pursuant to an order dated January 17, 2017, and entered on January 18, 2017, the parties were to attempt to agree to increased custodial time for Father pending trial.  Order, 1/18/17.  In January 2017, Father began keeping the Children overnight on Thursday nights and Sunday nights, without consultation with Mother or the Children.   N.T. at 30-32, 62, 65.

Father presented the testimony of two acquaintances, D.K. and R.D. at the custody trial.  Further, the parties offered and stipulated to the entry of four joint exhibits, including the reports of the guardian *ad litem*, Gene M. Molino, Esquire, and counselor, Matthew DiBiase, M.S., N.C.C., L.C., Cornerstone Counseling and Consulting Specialist, LLC.[4]  N.T. at 3-4.  Mr. Molino's report is dated November 21, 2016.  Mr. DiBiase's report is undated, but was recent in time to the hearing.  N.T. at 3-4.  The parties agreed not to have the [C]hildren interviewed by the court *in camera*.  **Id.** at 89-90.

---

[3] Despite some prior disparity as to Father's Thursday custody and its frequency, Father testified at trial that he exercised custody every other Thursday.  N.T. at 13.

[4] Notably, Mr. Molino was appointed by the trial court pursuant to order dated May 12, 2016, and entered May 13, 2016.  Order, 5/13/16.  Further, the court ordered counseling pursuant to order dated January 17, 2017, and entered January 18, 2017.  Order, 1/18/17.

Following trial, by order dated July 28, 2017, and entered August 1, 2017, the trial court awarded the parties shared legal and shared physical custody of the Children. Specifically, the court awarded physical custody on an alternating weekly basis during the summer. During the school year, the court granted Father physical custody on alternate weekends from Friday after school until Monday return to school, alternate Tuesdays (preceding Father's weekend) after school until 8:00 p.m., and alternate Thursdays (after Father's weekend) after school until Friday return to school. The court additionally issued a holiday and vacation schedule.

On August 28, 2017, Father filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In an order dated September 1, 2017, and entered September 5, 2017, the court directed Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Father re-filed his concise statement on September 14, 2017. Thereafter, the trial court prepared its Supplemental Memorandum Issued Pursuant to Pa.R.A.P. 1925(a), dated October 12, 2017 and entered October 16, 2017, analyzing each of the custody factors pursuant to 23 Pa.C.S.A. § 5328(a).

On appeal, Father raises the following issues for our review:

> 1. Did the trial court abuse its discretion or commit an error of law in its July 28, 2017 Order in that it awards, grants and orders both parties to have shared legal and shared physical custody of their minor children, M.H. and J.H., but denies the [ ] [Father] actual shared physical custody of the minor children in terms of time spent with each parent?

2. Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in limiting the [ ] Father's physical custody of his minor children without any evidence or testimony that the [Father's] time with his minor children should be restricted or unequal to that of the [ ] Mother?

3. Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in failing to follow the mandates of 23 [Pa.C.S.A. § 5328(a)(10)] that the [c]ourt must consider which party is more likely to attend to the daily physical, emotional, developmental and special needs of the children? Did the lower [c]ourt erred [sic] in not considering which parent has the most flexible schedule and would be best able to provide transportation and support to the children in attending school and therefore erred [sic] in failing to find in favor of the [ ] Father [ ]?

4. Did the trial court abuse its discretion or commit an error of law, based upon the testimony of record below, in failing to find that as [ ] Father resides in the same school district, owns his own business, sets his own schedule, and that he would be able to transport the [C]hildren to and from school each day, without requiring them to be transported by school bus?

5. Did the trial court abuse its discretion or commit an error of law, in failing to give to give appropriate weight to the testimony of the Guardian Ad Litem in this case, Attorney Gene Molino, who stated that the [C]hildren are not seeing [ ] Father enough, and that the custody schedule should be modified to provide [ ] Father with additional periods of custody?

6. Were the trial court's conclusions unreasonable as shown by the evidence of record?

7. Did the trial court abuse its discretion or commit an error of law by failing to enter a custody order that is in the best interest of the children?

Father's Brief at 4-5.[5]

---

[5] We observe that Father states his issues somewhat differently than in his Rule 1925(b) statement. We, nevertheless, find that Father has preserved his challenges to the trial court's custody order.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); *see*

*also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015) *appeal denied*, 635

Pa. 754, 135 A.3d 586 (2016).

> This Court consistently has held:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting Jackson*

*v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An

abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**M.A.T. v. G.S.T.**, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.
>
> (5) Supervised physical custody.
>
> (6) Shared legal custody.
>
> (7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider. **See E.D. v. M.P.**, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Further, with regard to the custody, we have stated as follows:

. . . "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.,** 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. **Id.**

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.,** 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.,** 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V. v. S.T.**, 87 A.3d 818, 822-23 (Pa.Super. 2014) (emphasis in original).

We address Father's issues raised on appeal together as they are related and Father discusses them collectively in his appellate brief.[6] Father challenges the trial court's order as it failed to award equally shared physical custody. Father's Brief at 17-18, 22. He asserts the trial court erred and or abused its discretion as its findings are unreasonable and not in the Children's best interests. **Id.** at 16-17, 19, 21-22. Father points to the guardian *ad litem*'s opinion that the Children should spend more time with Father and that Father has a flexible schedule and ability to drive the Children to school and avoid an unnecessary, burdensome, and lengthy bus ride.[7] **Id.** at 17-18, 21-

_____

[6] Father enumerated seven issues on appeal, but the argument portion of his brief contains no subheadings or separation. We remind counsel such is in violation of Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Rather, Father titles the section "Argument for the Appellant Father" and under that heading presents a combined discussion of his issues raised. Father's Brief at 11-22. As we find Father's issues are interrelated, we do not find this defect to be substantial.

[7] Notably, Father fails to recognize that Mr. Molino, while recommending additional custodial time for Father, opines that "[t]he amount of said

22.  In this regard, Father maintains that Section 5328(a)(10), pertaining to which party is more likely to attend to the daily physical, emotional, developmental and special needs of the child, should encompass a consideration of flexibility and the ability to provide transportation to school. *Id.* at 21.  Specifically, Father asserts:

> . . . In the instant case, the lower [c]ourt . . . ignored factors that would support [] Father's case for equal primary physical custody, and further ignored [] Father's ability to transport the [C]hildren to and from school, without the need of burdensome and time-consuming school busing, which is not inconsequential. In so doing, it ignored the best interests of the children.
>
> . . .
>
> For the reasons given below, the [ ] Father argues that [  ] Mother did not meet her burden of proof, but that he has met his burden of proof.  [] Father further argues that the [c]ourt below did not sufficiently consider and analyze all of the testimony, and that the lower court drew conclusions that are either not based on, or are controverted by the testimony.  It is the position of [] Father that there was insufficient information in the record to support the lower [c]ourt's decision to provide for unequal physical custody of the [C]hildren and require the [C]hildren to undergo unnecessary and lengthy school busing for nearly 10 months a year.  The [t]rial [c]ourt's conclusions were unreasonable as shown by the evidence of record.  The [t]rial [c]ourt abused its discretion and/or committed an error of law by failing to enter a custody order that is in the best interest of the children. . . .

---

expansion and whether or not it should be a truly 'shared' physical custody schedule will be for the [c]ourt to determine." Joint Exhibit 1 at 4.  Further, in 2018, both of the Children will attend school in the same building in which Mother works and she will be available to transport them to school, if they desire.  N.T. at 72.  Also, despite Father's bald assertions, no evidence was presented to suggest any adverse consequences pertaining to school bus transportation.

. . .

Pennsylvania law specifically alludes to a child's physical well-being as one of the factors to be considered in making a custody award based on the child's best interests. 23 [Pa.C.S.A. § 5328(a)(10)] mandates the court to consider which party is more likely to attend to the daily physical, emotional, developmental and special needs of the children. This should include which parent has the most flexible schedule and would be best able to provide transportation and support to the [C]hildren in attending school.

. . .

From the [t]rial [c]ourt's Order, ignoring almost entirely the Guardian Ad Litem's report and the wishes of the children, and further ignoring the fact that the [C]hildren will be required to undergo unnecessary and lengthy school busing for nearly 10 months a year, it is clear that the record does not provide a basis for the assumptions made by the lower [c]ourt. It is clear that the [t]rial [c]ourt's conclusions are unreasonable as shown by the evidence of record. It is clear that the [t]rial [c]ourt abused its discretion and committed errors of law by failing to enter a custody order that is in the best interest of the children. It was error for the lower [c]ourt to deny the actual and equal shared physical custody of the [C]hildren, and constituted an abuse of discretion.

*Id.* at 16-17, 19-22.

In its opinion in support of its order, the trial court carefully analyzed and addressed each factor pursuant to Section 5328(a) and the Children's best interests as follows:

The [c]ourt enters its order in consideration of the applicable and relevant factors contained in 23 Pa.C.S.[A. §] 5328[,] which are listed as follows:

**1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party[.]**

As previously mentioned, the parties had been functioning without a custody order. As indicated, [] Father took it upon himself to change the mutually accepted agreement in January, 2017 whereby he kept the [C]hildren on alternating Thursday and Sunday evenings where previously he had been returning the [C]hildren to the mother without an overnight visit. [] Father admitted that he did not discuss this change with the [C]hildren. [] Mother confirmed that [] Father started taking the overnights without letting her know. Apparently, [] Mother did not object but it is obvious from [] Father's conduct that he is solely concerned with the amount of time he spends with the [C]hildren and doesn't feel that it is necessary to discuss this issue with [] Mother.

**2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child[.]**

The [c]ourt does not find that the [C]hildren have suffered from any past or present physical abuse.[8]

**3. The parental duties performed by each party on behalf of the children.**

Both parties testified that during the initial 5 years of marriage, [] Father worked and [] Mother stayed home with the [C]hildren. She was responsible for taking the [C]hildren to medical appointments and [] Father indicated that he may have gone with the [C]hildren on some occasions. [] Father indicated that they presently share the responsibility of taking the [C]hildren to doctors and dentists appointments as well as appointments with the school. After becoming self-employed, [] Father was able to take the [C]hildren to the doctors and the dentist.

[] Mother testified that she is responsible for signing up the [C]hildren for their activities, taking the [C]hildren to church and participating with them in various activities. She indicated that

_____

[8] The trial court did not separately address Section 5328(a)(2.1). However, there was no evidence presented during the custody hearing which related to this factor.

- 13 -

she has always been the primary care giver. The [c]ourt concludes that each parent is fully capable of performing the parental duties required of a parent taking care of children of their age.

**4. The need for stability and continuity in the child's education, family life and community life[.]**

[] Mother testified that she thinks that the [C]hildren need structure in their lives. She further indicated that she knows that [F]ather checks their homework but there have been many occasions where she looks at one of the children's homework and it is done, but it is done wrong. This occurs on a regular basis. Her concern is with the youngest child and she feels that he needs to be monitored when he comes home from school with his homework to make sure that it's done and that it's there. She has noticed a decline in the youngest child's grades since [] Father changed the custody schedule without telling her. When in [] Father's custody, the oldest child missed two Sundays when he was scheduled to serve at church. As a result, she has been taking them to church. She also indicated that during school she feels that the [C]hildren need to wake up in the morning in the same place. When the Father was asked whether he had taken the children to two R-[r]ated movies he indicated that he did not know. He indicated that he did not know the name of a movie that he had taken them to and did not seem concerned about the ratings of movies that he had gone to with the [C]hildren. When asked about taking the [C]hildren to a movie that contained binge drinking, drug use, crude sexual situations, strong language, violence and sexual related scenes, he was asked if that sounded like an appropriate movie to take an 11 and 12 year old child to. He answered by saying "I don't know. You tell me what's appropriate?["] When asked again about taking the [C]hildren to such a movie, he did not respond. He further went on to say that he doesn't really pay attention to the movies and takes them to a movie that they request. He further indicated that he thought children can be taken to an R-rated movie if they are with an adult. He further presumed that it was OK when the theater sold him tickets to a movie and they knew that there were 2 kids and an adult. He concluded by saying that an R-rated movie, if they're with and adult, according to that rating, "they can go see the movie." He did not seem concerned about the contents of an R-rated movie.

### 5. The availability of extended family[.]

[] Mother testified that she lives in Benton and has three siblings in the area all of which have children. They live relatively close, within 15 to 20 minutes as well as the [C]hildren's maternal grandmother. The [C]hildren get to see the extended family members on a weekly basis and even more so in the summer. The family does many things together including cooking, reading, watching movies, gardening, playing baseball and vacationing together.

[] Father indicated that he lives in Shickshinny. He stated that his mother lives in Wapwallopen which is 8 miles away and that there are unidentified cousins living a mile from his mother. He did not indicate what activities the [C]hildren share with his relatives.

Based upon the testimony of the parties, it appears that the [C]hildren have a close relationship with [] Mother's relatives living in the area of her home. The relationship of the minor children with [] Father's relatives is unknown.

### 6. The child's sibling relationships[.]

Both parties indicated that the two children are very close to one another.

### 7. The well-reasoned preference of the child, based on the
### child's maturity and judgment[.]

The parties indicated that they did not want the [C]hildren to be interviewed by the [c]ourt. However, there was evidence of the [C]hildren's preference on certain issues. The parties agreed that there would be 4 joint exhibits, one of which was the report of the guardian ad litem dated November 21, 2016. During his testimony, the father read from that report which indicated that both children stated that they want to maintain the current schedule but the younger child indicated that he would like to spend more time with his dad during the summer months. The [c]ourt has taken the [C]hildren's comments into consideration.

### 8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence

- 15 -

**where reasonable safety measures are necessary to protect the child from harm;**

It is the [c]ourt's opinion that neither parent has attempted to turn either child against the other parent.

**9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs[.]**

The testimony indicates that both parents love the [C]hildren and they satisfy the emotional needs of each child.

**10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child[.]**

[] Father testified that he has his own business allowing him to create his own schedule which allows him to transport the [C]hildren to and from their schools. [] Mother testified that she works for the school district in which the [C]hildren are enrolled and has a flexible schedule. She can take them to school or lets them ride on the bus, which ever method they prefer. Beginning in 2018, both children will be enrolled in the same school in which she works.

She was asked when the boys have a problem and they are crying about something and they come to you, do you both react in the same way and she said no. She indicated that she listens to what they have to say and she has seen the Father say things like "Don't be a baby" or "Like there's no crying here[."] The guardian ad litem indicated that [] Mother had concerns about [] Father's patience and his ability to assist the [C]hildren with their school work claiming that the [C]hildren often state "Daddy doesn't understand math[."] She also discussed the Father's lack of cooperation in taking the [C]hildren to church on Sunday. The guardian ad litem also stated that he believed that [] Mother had legitimate concerns and was not feigning concern about the [C]hildren spending more time with their father. In fact, he indicated that both parents should ensure that the [C]hildren attend church on a regular basis.

**11. The proximity of the residences of the parties[.]**

While the marital home is located in Benton, it is [F]ather who has chosen to live in Shickshinny.  The municipalities are approximately 14 miles apart.

**12. Each party's availability to care for the child or ability to make appropriate child-care arrangements[.]**

Both parties are available to care for the [C]hildren and to make appropriate child[-]care arrangements.

**13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party[.]**

While generally speaking it appears that both parents are able to cooperate to a certain extent, [] Father has acted in a unilateral manner.  The prime example is his change of the previously agreed upon custody schedule to provide him with additional overnight visits without consulting the [C]hildren or [M]other.

**14. The history of drug or alcohol abuse of a party or member of a party's household[.]**

There is no evidence of drug or alcohol abuse by either party.

**15. The mental and physical condition of a party or member of a party's household.**

There is no evidence of a mental or physical condition of either [p]arent.

**16. Any other relevant factor.**

The [c]ourt has taken into consideration the report of Gene Molino, Esq., Guardian Ad Litem, which is dated November 21, 2016 as well as the undated report of Matthew DeBiase, counselor who met with the parents and the [C]hildren on several occasions. The reports are similar and report no concerns by the guardian ad litem or the counselor.  Mr. DeBiase indicated that he had no

- 17 -

concerns for either child's safety or emotional well-being and they had indicated they felt that the summer schedule stay exactly as is. However, he did recommend that the [C]hildren have an extra day with mom on Thursday or Sunday to help with their homework and be returned home on the evening of those days. The report of the guardian ad litem recommended that the custody schedule be modified by giving [] Father additional periods of custody. He further indicated that "the amount of said expansion and whether or not it should be a truly shared physical custody schedule will be for the [c]ourt to determine[."] While a trial court is not required to accept the conclusions of an expert witness in a child custody case, this court found the counselor and guardian ad litem's input instructive considering the fact that both parties stipulated to the admission of the reports of the counselor and guardian a[d] litem. M.A.T. v. G.S.T, 989 A.2d 11 (Pa.Super. 2010)[.]

The [c]ourt has considered all of the relevant factors in the case at hand and taking into consideration the paramount concern in a child custody case, i.e., the best interests of the children, the court has determined to increase the amount of time that the father will have with the [C]hildren and has awarded shared legal custody to both parents.

T.C.O., 10/16/17, at 7-17 (citations to record omitted).

In further support of its findings, the court reasoned:

Further, it is the [c]ourt's opinion that issues two, three, four, five, and six are in effect the same issue, that is, that the [c]ourt's failure to direct that the parties shall have an equal amount of time with both children is an error in law and abuse of discretion. It is the [c]ourt's opinion that [Father] believes that shared custody means equal custody. Clearly, that is not true. . . .

. . .

With respect to the eighth issue raised on appeal, [] Father claims that this [c]ourt has not considered factor No. 10 which deals with which party is more likely to attend to the daily physical, emotional, developmental and special needs of the children. Primarily, which parent has the most flexible schedule and would be able to provide transportation and support to the

- 18 -

children in attending school. To the contrary, the [c]ourt has considered all factors, including number ten as addressed herein.

In his ninth issue, [] Father raised a similar issue directed at the fact that [] Father owns his own business, sets his own schedule and would be able to transport the [C]hildren to and from school each day, without requiring them to be transported by school bus. To the contrary, the [c]ourt did consider this issue and also concluded that [] Mother's schedule would be very flexible especially considering the fact that she would be employed in the same school district and school in which both children were attending. Further, she indicated that it was her preference to let the decision as to whether or not the [C]hildren should be transported by the parents or by taking the school bus be left up to the [C]hildren.

In the tenth issue raised on appeal, [] Father claimed that the [c]ourt erred in law and abused its discretion in failing to give appropriate weight to the testimony of the guardian ad litem in this case who indicated the [C]hildren are not seeing [] Father enough and that the custody schedule should be modified to provide [] Father with additional periods of custody.

As previously mentioned, the guardian ad litem did indicate that he felt that [] Father should be given additional periods of custody also indicating that the additional period of time and whether or not it should be a truly shared physical custody schedule would be up to the [c]ourt to determine. The [c]ourt has determined that the schedule should be greater but not equal. In reaching its conclusion, the [c]ourt has given consideration inter alia, to the reports of the guardian, as well as the counselor who referred to the desires of the [C]hildren.

It should be noted that the [c]ourt did not hear directly from the guardian ad litem, the counselor from Cornerstone Counseling and Consulting Specialists, LLC and the two children. The two experts did not testify but their reports were jointly admitted into evidence. Further, both parties agreed that the [C]hildren would not testify.

The [c]ourt enters its order in consideration of the applicable and relevant factors contained in 23 Pa.C.S.[A. §] 5328 which are listed.

*Id.* at 18-21 (citations to record omitted).

This Court has stated that the trial court is required to consider all of the Section 5328(a) factors in entering a custody order. ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 339 (Pa.Super. 2013), appeal denied, 620 Pa. 710, 68 A.3d 909 (2013). Critically, as we stated in ***M.J.M.***:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. ***See A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added). Further, we have also noted that while the primary caretaker doctrine is no longer viable, a court may still consider a parent's role as primary caretaker in its consideration of the custody factors.

> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

*Id.*

Father's claims on appeal essentially dispute the trial court's findings of fact and determinations regarding credibility and weight of the evidence, particularly as they pertain to the issue of which party is in a better position to transport the children to school. His appellate brief is comprised primarily of general allegations of error in which Father questions the trial court's conclusions and assessments and seeks this court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence; this we cannot do.

Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527.

As we stated in *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005):

It is not this Court's function to determine whether the trial court reached the "right" decision; rather, we must consider whether, "based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations," the trial court erred or abused its discretion in awarding custody to the prevailing party.

(*quoting Hanson v. Hanson*, 878 A.2d 127, 129 (Pa.Super. 2005)). After a thorough review of the record, we find no abuse of discretion. Further, to the extent Father challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion, as the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. *See M.J.M.*, 63 A.3d at 339.

In the case *sub judice*, the trial court exhaustively and reasonably analyzed and addressed each factor under Section 5328(a).  **See** T.C.O. at 7-17.  After careful review of the record, we determine that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them.  **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/27/18